513 S.E.2d 472

### In re BETH ANN B. and Courtney Danielle B.

### No. 25210.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 10, 1998.

Decided Dec. 16, 1998.

Ernest M. Douglass, Douglass & Douglass, Parkersburg, West Virginia, Attorney for Appellant, Debbie B.

Kelly L. Lee, Assistant Prosecuting Attorney, Wood County, Parkersburg, West Virginia, Attorney for Appellee, West Virginia Department of Health and Human Resources.

WORKMAN, Justice:

This child neglect matter is before this Court on appeal from a final order of the Circuit Court of Wood County, entered May 19, 1998. The Appellant, Debbie B., protests the circuit court's order, which effected, among other things, a termination of her parental rights in relation to Beth Ann B. and Courtney Danielle B.[1] The sole issue is whether a circuit court may terminate a parent's rights in his or her children without first conducting a disposition hearing, when the parent has signed an agreed order stipulating to the predicate facts for such termination. We find, under the applicable law, that a disposition hearing is required in those circumstances. Based on our review of the record,[2] the parties' briefs,[3] and all other

---

1. In keeping with our usual practice in matters of child abuse and neglect, we refer to the individuals involved in this proceeding using the initials of their surnames. *See In Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The record before this Court is minimal. Although it is apparent that the testimony of several witnesses was presented during the adjudicatory hearing, we have received no transcripts of that testimony, or any other testimony in this case. The record is also devoid of a child's case plan, which the DHHR is required by *West Virginia Code* § 49–6–5(a) to prepare, and which must comport with that statute and with Rule 28 of the *Rules of Procedure for Child Abuse and Neglect Proceedings*.

3. We feel compelled to comment on the bare bones nature of the Appellant's brief. While this

matters submitted to this Court, we conclude that the circuit court erred in failing to conduct a disposition hearing prior to terminating Debbie B.'s parental rights. Accordingly, we reverse and remand the decision of the circuit court.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Debbie B. is the natural mother of Beth Ann B., born February 20, 1995, and Courtney Danielle B., born October 31, 1996. On June 9, 1997, the Appellee, the West Virginia Department of Health and Human Resources (hereinafter "DHHR"), filed a petition, pursuant to *West Virginia Code* § 49–6–1 (1992),[4] alleging that Beth Ann B. and Courtney Danielle B. were "neglected children," as defined by *West Virginia Code* § 49–1–3 (1994).[5] As grounds for this allegation, the DHHR asserted that the health, safety, and welfare of the children were harmed and threatened by Debbie B.'s inability to provide them with supervision, food, shelter, medical care, and clothing. The petition asked that the children be placed into the temporary custody of the DHHR, pending a hearing on the matter.

By order entered June 9, 1997, the circuit court awarded the DHHR temporary custody of the children. A preliminary hearing was waived by agreement of the parties, as reflected in an agreed order entered by the circuit court on July 18, 1997. On November 7, 1997, an adjudicatory hearing was held.

After considering the evidence adduced at the hearing, the circuit court found that Beth Ann B. and Courtney Danielle B. were neglected children and that the neglect had been inflicted by Debbie B. These findings were set forth in an order entered by the circuit court on November 24, 1997. By that same order, the circuit court directed that the children remain in the temporary custody of the DHHR.

Following adjudication, Debbie B. was granted a post-adjudicatory improvement period. The terms and conditions of the improvement period were set forth in a Family Case Plan, dated December 10, 1997, prepared by a DHHR child protective service worker.

Although another hearing in the case was scheduled for April 10, 1998, the hearing did not occur. Instead, on that date, the parties advised the circuit court that they had come to "an agreement regarding the best interests of the children." This ostensible agreement was detailed in an agreed order, which was signed by Debbie B. and her counsel. The material provisions of the agreement, as set forth in the agreed order, were as follows:

> 3. That the respondent-mother failed to comply with the terms of the improvement period;
>
> . . . .
>
> 6. That there is no reasonable likelihood that the conditions of neglect can be substantially corrected in the near future by the respondent-mother; that it is in the

Court certainly encourages lawyers to submit appellate briefs which are concise, we also put a premium on clarity. From the Appellant's cryptic brief, it is unclear to us on what grounds she claims that the lack of a disposition hearing adversely impacted her rights or what relief she is seeking.

4. *West Virginia Code* § 49–6–1 was amended by the Legislature in 1998. The amendment does not impact the outcome of this case.

5. *West Virginia Code* § 49–1–3 defines a "neglected child" to mean a child:

(A) Whose physical or mental health is harmed or threatened by a present refusal, failure or

inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when such refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian; or

(B) Who is presently without necessary food, clothing, shelter, medical care, education or supervision because of the disappearance or absence of the child's parent or custodian. . . .

*Id.* *West Virginia Code* § 49–1–3 was amended by the Legislature in 1998, but the amendment did not alter the foregoing definition of a "neglected child."

best interests of the above-named children that there be no reunification at this time with the respondent-mother; that the Department of Health and Human Resources has taken steps and made reasonable efforts to provide the respondent-mother with [the] opportunity to correct the problems and to prevent removal of the children; that the above-named children need permanency in their lives; that the respondent-mother is incapable of properly parenting the above-named children.

After outlining the parties' agreement, the agreed order provided that "the Court does hereby adopt the above as its findings." The order concluded that the parental rights of Debbie B. in relation to Beth Ann B. and Courtney Danielle B. be terminated. On May 19, 1998, the circuit court entered the agreed order.

## II.

### STANDARD OF REVIEW

■ In considering the circuit court's order, this Court employs the two-prong deferential standard recently enunciated in syllabus point one of *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998), where we stated:

> "When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. Pt. 1, *McCormick v. Allstate Insurance Company*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

### III.

### DISCUSSION

■ The only error assigned in this appeal is that the circuit court erred in failing to conduct a disposition hearing prior to terminating the Appellant's parental rights, as required by the *Rules of Procedure for Child Abuse and Neglect Proceedings*. The DHHR does not refute that the circuit court disposed of this case based entirely on the parties' agreement, as embodied in the agreed order, without any disposition hearing. Rather, the DHHR argues that Debbie B. understood "the effect of signing the agreed order," and also points to the fact that her attorney was present during that signing.[6] Thus, the issue before this Court is whether the circuit court can terminate parental rights, in a child abuse and/or neglect proceeding, without first conducting a disposition hearing, where the parent has signed an agreed order containing stipulations of the facts necessary for such termination.

■ The statutory scheme applicable in child abuse and neglect proceedings provides for an essentially two phase process. The first phase culminates in an adjudication of abuse and/or neglect. *See W.Va.Code* § 49–6–2(c) (1996). The second phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. *See W.Va.Code* § 49–6–5 (1996).[7] It is this latter phase that is relevant to this appeal.

In the dispositional phase of a child abuse and neglect proceeding, the "party or parties having custodial or other parental rights or responsibilities to the child" are entitled, pursuant to *West Virginia Code* § 49–6–2(c), to "a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." *Id.* In addition, *West Virginia Code* § 49–6–5, which sets forth a panoply of dispositional alternatives available to the circuit court, including termination of parental rights, provides that "[t]he court shall forthwith proceed to disposition giving both the petitioner

---

**6.** We are greatly troubled by the complete absence of the guardian ad litem during the course of this appeal. In *Michael M.*, this Court underscored that "guardians *ad litem* have a duty to fully represent the interests of their child wards at all stages of the abuse and/or neglect proceedings, both in the circuit court and on appeal." 202 W.Va. at 356 n. 11, 504 S.E.2d at 183 n. 11.

The guardian *ad litem* totally disregarded this Court's mandate as set forth in *Michael M.*

**7.** *West Virginia Code* § 49–6–5 was amended in 1998, but the amendment does not affect this decision.

[DHHR] and respondents [parent(s) ] an opportunity to be heard." *Id.* If the State seeks termination of parental rights, then *West Virginia Code* § 49–6–5 requires that certain facts be proven as a prerequisite to such termination. Those ultimate facts, which the State must prove, are delineated in *West Virginia Code* § 49–6–5(a)(6) and § 49–6–5(b).

Clearly, the statutory scheme contemplates a disposition hearing prior to termination of an individual's parental rights. This Court recognized as much in syllabus point one of *West Virginia Department of Welfare ex rel. Eyster v. Keesee,* 171 W.Va. 1, 297 S.E.2d 200 (1982), where we held:

> "West Virginia Code, Chapter 49, Article 6, Section 2, as amended, and the Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing." Syl. pt. 2, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973).

Our decision in *Keesee* preceded the advent of the *Rules of Procedure for Child Abuse and Neglect Proceedings,* adopted by order of this Court on December 5, 1996, and effective on January 1, 1997. But the mandatory prerequisite of a disposition hearing where parental rights are being terminated is plainly incorporated in the *Rules.*

Rule 33 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* provides, in pertinent part:

> (b) *Voluntariness of consent.* Before accepting a stipulation of disposition, the court shall determine that the parties understand the contents of the stipulation and its consequences, the parties voluntarily consent to its terms, and the stipulation or uncontested adjudication meets the purposes of these rules and controlling statute and is in the best interests of the child. The stipulations shall be specifically incor-

porated in their entirety into the court's order reflecting disposition of the case. *Id.*

Moreover, the relevant portions of Rule 35 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* provide:

> (a) *Uncontested termination of parental rights.* If a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing:
>
> (3) If the parent(s) is/are present in court and voluntarily has/have signed a relinquishment of parental rights, the court shall determine whether the parent(s) fully understand(s) the consequences of a termination of parental rights, is/are aware of possible less drastic alternatives than termination, and was/were informed of the right to a hearing and to representation by counsel.
>
> (4) If the parent(s) is/are not present in court but has/have signed a relinquishment of parental rights, the court shall determine whether there was compliance with all state law requirements regarding a written voluntary relinquishment of parental rights and whether the parent(s) was/were thoroughly advised of and understood the consequences of a termination of parental rights, is/are aware of possible less drastic alternatives than termination, and was/were informed of the right to a hearing and to representation by counsel. *Id.*

 While Rules 33 and 35 obviously contemplate the use of stipulations in connection with child abuse and neglect proceedings, these rules nonetheless require a disposition hearing even where a parent has signed a stipulation of facts which, if proven, would support a termination of parental rights under *West Virginia Code* § 49–6–5.[8] Parties cannot by stipulation negate the necessity for a hearing which comports with the provisions of Rules 33 and 35.

---

**8.** As this Court has previously held, "[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. Pt. 6, *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973).

*State v. T.C.,* 172 W.Va. 47, 303 S.E.2d 685 (1983), was procedurally analogous to this case in that the adjudicatory hearing under *West Virginia Code* § 49–6–2 was aborted when the parties entered into a voluntary arrangement regarding the custody of the allegedly abused child. In syllabus points one and two of *T.C.,* this Court held:

> In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49–6–5, it must hold a hearing under W.Va.Code, 49–6–2, and determine "whether such child is abused or neglected." Such a finding is a prerequisite to further continuation of the case.

> W.Va.Code, 49–6–1, *et seq.,* does not foreclose the ability of the parties, properly counseled, in a child abuse or neglect proceeding, to make some voluntary dispositional plan. However, such arrangements are not without restrictions. First, the plan is subject to the approval of the court. Second, and of greater importance, the parties cannot circumvent the threshold question which is the issue of abuse or neglect.

■ Accordingly, under the facts of this case, we hold that in a child abuse and/or neglect proceeding, even where the parties have stipulated to the predicate facts necessary for a termination of parental rights, a circuit court must hold a disposition hearing, in which the specific inquiries enumerated in Rules 33 and 35 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* are made, prior to terminating an individual's parental rights.[9]

9. Any disposition must, of course, also comport with *West Virginia Code* § 49–6–5.

10. Since the Appellant was represented by an attorney when she signed the agreed order, it

## IV.

## CONCLUSION

Therefore, upon all of the foregoing, we reverse the order appealed from and remand this case to the circuit court with directions to conduct a disposition hearing for the limited purposes of ascertaining whether Debbie B. fully understood the contents of the agreed order and the consequences of the termination of her parental rights, was aware of possible, less drastic alternatives than termination, voluntarily consented to such termination, and was informed of the right to a disposition hearing.[10] If after exploring these matters the circuit court finds affirmatively on these points, and further finds that the stipulated disposition (*i.e.,* termination of parental rights) is in the best interests of the children and meets the purposes of the *Rules of Procedure for Child Abuse and Neglect Proceedings* and *West Virginia Code* § 49–6–5, then Debbie B.'s parental rights should be terminated. Furthermore, as in all cases involving children, the circuit court must act with great dispatch to bring safety, stability, security, and permanency to the lives of Beth Ann B. and Courtney Danielle B.

Reversed and remanded with directions.

Chief Justice DAVIS and Justices STARCHER, MAYNARD and McCUSKEY joined the Opinion of the Court.

Justice McGRAW did not participate in the decision of this case.

seems likely that she was informed of her right to a disposition hearing but elected to execute the agreed order and thereby obviate the need for a full blown hearing.