**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **T.L.**

**No. 20-0911** (Monongalia County 19-JA-141)

**MEMORANDUM DECISION**

Petitioner Mother K.L., by counsel Kristen D. Antolini, appeals the Circuit Court of Monongalia County's October 15, 2020, order terminating her parental rights to T.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Stephanie Nethken, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in failing to hold an evidentiary hearing prior to the termination of her parental rights and in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner's substance abuse negatively affected her ability to parent three-month-old T.L. The DHHR alleged that it received a child abuse and neglect referral after T.L.'s birth in May of 2019 and confirmed that petitioner had limited prenatal care while pregnant with T.L. and had tested positive for heroin, morphine, and tetrahydrocannabinol ("THC") during her pregnancy. The DHHR alleged that petitioner was prescribed Suboxone, and, upon delivery of T.L., she tested positive only for her prescribed Suboxone. T.L.'s meconium was tested and was only positive for THC. The DHHR alleged that petitioner agreed to an in-home safety plan to help her maintain

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

sobriety, which included random drug screening and services provided by the DHHR. The DHHR removed T.L. from petitioner's care in August of 2019, after she missed several drug screening appointments, tested positive for fentanyl in late July of 2019, and, during an in-person contact with a DHHR worker, admitted to relapsing on heroin. Petitioner waived her preliminary hearing. A DHHR court summary, which was prepared for the preliminary hearing date, stated that petitioner had been referred to parenting and adult life skills classes and supervised visitation with the child.

The circuit court held an adjudicatory hearing in October of 2019. Petitioner did not appear but was represented by counsel. Upon counsel's representation that petitioner was absent because she was participating in a detoxification program, the circuit court continued the hearing.

In November of 2019, the circuit court reconvened for the adjudicatory hearing. A DHHR summary prepared and filed for this hearing stated that "[i]t [was] not believed that [petitioner] was in treatment [at the time of the October of 2019 hearing] as she [sent text messages to the child's caretaker] and attended a visit [with the child] on [T]hursday the week of the hearing." The DHHR also reported that petitioner's parenting and adult life skills classes were "closed" in October of 2019 due to petitioner's noncompliance. Likewise, petitioner's supervised visitation provider "closed" services for petitioner due to several cancelled visits, and petitioner's random drug screening referral was also ceased due to petitioner's inactivity. The report noted that petitioner had not complied with drug screening since September of 2019, at which time she tested positive for fentanyl, buprenorphine, cocaine, codeine, and morphine. Petitioner did not appear for the adjudicatory hearing but was represented by counsel. During the hearing, petitioner's counsel proffered that petitioner was absent due to a substance abuse treatment appointment. Thereafter, the circuit court heard testimony regarding petitioner's substance abuse and, ultimately, adjudicated her as an abusing parent. Petitioner made an oral motion for a post-adjudicatory improvement period, which the circuit court held in abeyance "to allow [petitioner] more time to get into treatment for substance abuse."

The circuit court held an initial dispositional hearing in December of 2019. Petitioner did not appear but was represented by counsel. Upon counsel's representation that petitioner had entered into substance abuse treatment, the circuit court granted petitioner's motion for a post-adjudicatory improvement period. The circuit court set forth the following terms: petitioner must attend and fully participate in all multidisciplinary team ("MDT") meetings and follow the recommendations set forth therein; she must participate in random drug screenings; and she must participate in parenting and adult life skills classes, as well as any other recommended services.

In July of 2020, the circuit court held a review hearing, which had been originally scheduled and continued in March of 2020.[2] Petitioner did not appear for the review hearing but was represented by counsel. Petitioner's counsel proffered that petitioner was aware of the hearing. Further, counsel proffered that petitioner completed a twenty-eight-day substance abuse program in April of 2020 "but failed to follow up with long-term treatment." Per a DHHR court report, petitioner participated in a MDT meeting in May of 2020, wherein she requested an additional

---

[2]This case suffered a substantial procedural delay directly related to the COVID-19 pandemic and resulting judicial emergency.

referral to restart parenting and adult life skills classes. Petitioner represented to the MDT that she had participated in a twenty-eight-day substance abuse program and had been searching for a sober living home.[3] The DHHR reported that petitioner did not appear for a MDT meeting in June of 2020. Further, the DHHR stated that it contacted petitioner in July of 2020 to provide her an appointment to obtain a "drug screen patch." Although petitioner agreed to attend the appointment, the DHHR reported that she "sounded under the influence" and "slurred her words" during the phone conversation. It was later discovered that petitioner did not attend this appointment. Ultimately, the circuit court set the matter for final disposition. Afterwards, petitioner filed a motion for a post-dispositional improvement period.

The circuit court held the final dispositional hearing in September of 2020. Petitioner did not appear but was represented by counsel. Petitioner's counsel proffered that petitioner was aware of the hearing and had planned to attend. However, minutes before the hearing began, counsel received a message from petitioner indicating that she had entered into a substance abuse treatment program and would not be present for the hearing. The DHHR submitted a report, which was admitted, that stated that petitioner's services had been closed for noncompliance. Petitioner had not submitted to a drug screen since September of 2019, at which time she was positive for multiple substances. The DHHR noted petitioner's assertion that she completed a twenty-eight-day substance abuse program in April of 2020, but reported that petitioner had not provided any confirmation that she had finished the program. The DHHR also reported that petitioner failed to participate in any outpatient programs or other addiction management services since her alleged completion of treatment. Petitioner's counsel confirmed that the DHHR had discussed the drug screening "patch several times [with petitioner,] and she has not gotten the patch." The DHHR recommended termination of petitioner's parental rights due to her nonparticipation in services and continued substance abuse. During the hearing, the DHHR moved the circuit court to take judicial notice of the prior evidence presented in the case. It argued that due to petitioner's failure to participate in random drug screening, the DHHR assumed that she continued to abuse controlled substances.

Ultimately, the circuit court denied petitioner's motion for a post-dispositional improvement period. Further, the circuit court found that petitioner had failed to remedy the conditions that gave rise to the child abuse and neglect petition and that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. The circuit court found that it was in T.L.'s best interests to terminate petitioner's parental rights and so ordered by its October 15, 2020, order. Petitioner now appeals this order.[4]

This Court has previously held:

---

[3]We note that petitioner disclosed two exhibits to the parties, which she has included in the appendix. However, there is no indication that these exhibits were admitted into evidence before the lower court and, therefore, they are not appropriate for consideration on appeal.

[4]The father's parental rights were also terminated below. According to the parties, the permanency plan for T.L. is adoption by a relative.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court clearly erred in failing to hold an evidentiary hearing prior to terminating her parental rights. She states that, at the final dispositional hearing, the DHHR did not present any witness testimony. Rather, it asked the circuit court to take judicial notice of all prior evidence and proffered a summary of that evidence. Petitioner emphasizes that the circuit court had taken no testimony since the November of 2019 adjudicatory hearing. In petitioner's view, the lack of testimony at the final dispositional hearing equates to the circuit court's failure to conduct an evidentiary hearing and a ruling based simply upon the proffer of the adjudicatory hearing testimony alone. Petitioner further argues that the proffer alone could not support the termination of petitioner's parental rights by clear and convincing evidence. Petitioner believes that, in order to meet its burden of proof, the DHHR was required, at a minimum, to present the testimony of a department worker. We find no merit to this argument.

Rule 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires that "[w]hen termination of parental rights is sought and resisted, the court shall hold an evidentiary hearing on the issues thus made, including the issues specified by statute and make such findings with respect thereto as the evidence shall justify." We reiterated this requirement in syllabus point two of *In re Beth Ann B.* 204 W. Va. 424, 513 S.E.2d 472 (1998).[5] In that case, we noted that the "'party or parties having custodial or other parental rights or responsibilities to the child' are entitled, pursuant to [West Virginia Code § 49-4-601(h)] to 'a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses.'" *Id.* at 428, 513 S.E.2d at 476. That requirement is echoed in West Virginia Code § 49-4-604(a)(2), which provides that "[t]he court shall forthwith proceed to disposition giving *both petitioner and respondents an opportunity to be heard*." (emphasis added).

In petitioner's case, we find the circuit court did not clearly err in its procedure. Critically, the court convened for a dispositional hearing, petitioner was represented by counsel, and she had

---

[5]"In a child abuse and/or neglect proceeding . . . a circuit court must hold a disposition hearing, in which the specific inquiries enumerated in Rules 33 and 35 of the *Rules of Procedure for Child Abuse and Neglect Proceedings* are made, prior to terminating an individual's parental rights." Syl. Pt. 2, *In re Beth Ann B.* 204 W. Va. 424, 513 S.E.2d 472 (1998).

an opportunity to be heard. On appeal, petitioner is not arguing that she was denied her opportunity to present evidence or cross-examine witnesses, and the record would not bear out such an assertion. Rather, petitioner asserts that the circuit court was required to take testimony at this hearing, notably without any authority to support such a requirement. Petitioner has seemingly ignored the substantial evidence that the DHHR submitted through its court summaries. As noted, a summary was prepared in advance of every hearing, and the circuit court's orders note that these summaries were admitted into the record without objection. As more fully explained below, that evidence, combined with the evidence taken at the adjudicatory hearing that established petitioner was an abusing parent, proved, clearly and convincingly, that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse in the near future. Petitioner had an opportunity to rebut this evidence or present any evidence that she remedied the conditions of abuse and neglect or otherwise complied with services, but she failed to do so. Accordingly, we find the lack of testimonial evidence presented at the dispositional hearing inconsequential given the substantial evidence admitted through the DHHR court summaries. The circuit court held a properly noticed dispositional hearing, and petitioner had a full opportunity to be heard. Therefore, we find no error.

Petitioner's argument that the circuit court erred in terminating her parental rights relies heavily on her alleged error that the circuit court failed to conduct a dispositional hearing. She argues that, had an evidentiary hearing been held, the circuit court would have learned of the steps that she had undertaken to rectify the conditions of abuse and neglect. We find no merit to this argument.

West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect is supported by the record. A multitude of DHHR court summaries, which were admitted as evidence without objection, detailed petitioner's decline in compliance with services throughout the improvement period and thereafter. Notably, prior to the petition's filing and the circuit court granting petitioner an improvement period, she had been afforded services that were later incorporated as terms of her improvement period. However, for each term, petitioner failed to comply, and those services were discontinued. This was true for petitioner's parenting and adult life skills classes, random drug screenings, and supervised visitation services. To petitioner's credit, and as she emphasizes on appeal, the DHHR recognized and reported that she completed a twenty-eight-day substance abuse treatment in April

5

of 2020. Yet, petitioner "failed to follow up with long-term treatment" and also failed to resume random drug screenings. Per the reports and petitioner's own counsel, petitioner was offered the drug screening "patch" "several times," but she did not follow through. Just as concerning, the DHHR reported that petitioner appeared "under the influence" and "slurred her words" in June of 2020, after her substance abuse treatment. Contrary to petitioner's argument on appeal, the circuit court was well informed as to petitioner's progress by the DHHR's consistent court summaries. The circuit court's finding that there was no reasonable likelihood that petitioner could remedy the conditions of abuse and neglect is based upon petitioner's lack of progress and her failure to follow through with a reasonable family case plan. Upon our review, we find no error in that finding.

To the extent that petitioner argues that the circuit court should have granted her additional time to improve, such as a post-dispositional improvement period, we have held that the

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based upon the foregoing finding, the circuit court was within its discretion to terminate petitioner's parental rights rather than imposing a less-restrictive dispositional alternative, such as the post-dispositional improvement period that she suggests on appeal. We find no error in the circuit court's exercise of that discretion.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 15, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton